UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

BRYAN A. LAMEY,                                           No. 14-13729 ta7

    Debtor.

EDWARD ALEXANDER MAZEL,
Chapter 7 Trustee, and UNITED REAL
ESTATE LAS CRUCES, LLC,

    Plaintiffs,

v.                                                                  Adv. No. 18-01057-t

LAS CRUCES ABSTRACT AND TITLE
COMPANY, FIDELITY NATIONAL
TITLE INSURANCE COMPANY, and
TCNM, LLC,

    Defendants.

## **OPINION**

Defendant Fidelity National Title Insurance Company has moved for summary judgment that the chapter 7 trustee lacks standing to bring the six claims he asserted against it. Fidelity argues that because the debtor had no standing to bring the claims, the trustee likewise has no right to bring them. The Trustee agrees that he cannot bring the claims unless the debtor could but argues that the debtor had the right to assert the claims. The Court concludes that the debtor lacked standing to bring the claims, so will enter a partial summary judgment against the Trustee on them.

I.      FACTS

The Court incorporates by reference the Omnibus Findings of Fact for All Pending Motion for Summary Judgment, entered March 20, 2020, doc. 159.

## II. DISCUSSION

### A. Summary Judgment Standards.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" thereby entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). In ruling on a motion for summary judgment, the Court is required to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### B. Count 1: Breach of Contract.

The Trustee sued Fidelity for breach of contract on the title policy at issue. The title policy was between Fidelity and URELC. The Debtor Bryan Lamey was neither a party to nor an insured under the policy. As a general proposition, "[o]ne who is not a party to a contract cannot sue to enforce it." *Casias v. Continental Cas. Co*, 125 N.M. 297, 300 (Ct. App. 1998). Rather, a breach of contract claim must be brought by the real party in interest, i.e., the contracting party. Fed. R. Civ. Pro. 17(a)(1); Fed. R. Bankr. Pro. 7017. Stated differently, strangers to a contract are not real parties in interest and lack standing to enforce it. *See Marchman v. NCNB Texas Nat. Bank*, 120 N.M. 74, 81 (S. Ct. 1995) (the corporation was the real party in interest to enforce a contract it entered into; plaintiff shareholder lacked standing to do so); *see generally Deutsche Bank Nat. Trust Co. v. Johnston*, 369 P.3d 1046, 1050 (N.M. 2016) (standing requires injury in fact, causation, and redressability), citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008).

An exception to the general rule is that "[a] third party may be a beneficiary of such contract, and as a beneficiary may have an enforceable right against a party to a contract." *Fleet Mortg. Corp. v. Schuster*, 112 N.M. 48, 49 (S. Ct. 1991). The Trustee argues that Lamey was a third-party beneficiary of the title policy and therefore had a right to sue Fidelity for breach. If so, the Trustee could bring the claim as an estate asset. *See generally* 11 U.S.C. § 541(a)(1) ("all legal or equitable interests of the debtor in property as of the commencement of a bankruptcy case" become property of the bankruptcy estate).

To demonstrate third-party beneficiary status, a plaintiff must show that he was not merely an *incidental* beneficiary of the contract but an *intended* beneficiary. *McKinney v. Davis*, 84 N.M. 352, 353 (S. Ct. 1972) (emphasis added); *see also German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least, show that it was intended for his direct benefit."). In New Mexico,

> A third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others (1) if he is a creditor of the promisee or of some other person and the contract calls for a performance by the promisor in satisfaction of the obligation; or (2) if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract. A third party may be included within both of these provisions at once, but need not be. One who is included within neither of them has no right, even though performance will incidentally benefit him.

*Permian Basin Inv. Corp. v. Lloyd*, 63 N.M. 1, 7 (S. Ct. 1957), quoting Corbin on Contracts, Vol. 4, § 776 at 18-19. The first of Corbin's alternatives does not apply here. Therefore, for Lamey to be a third-party beneficiary of the title policy, the Trustee must show that the policy was of "pecuniary benefit" to Lamey and that the policy is so expressed as to give Fidelity reason to know that benefitting Lamey was one of the reasons URELC bought the policy. *Id.;* s*ee also Valdez v.*

-3-
Case 18-01057-t    Doc 167    Filed 04/03/20    Entered 04/03/20 14:45:34 Page 3 of 12

*Cillessen & Son, Inc.*, 105 N.M. 575, 581 (S. Ct. 1987) (intent to benefit the third party must appear either from the contract itself or from evidence that the third party was the intended beneficiary); *Casias v. Continental*, 125 N.M. at 300 (the person claiming to be the third-party beneficiary of a contract has the burden of showing that the parties to a contract intended to benefit him).

Unless a contract is ambiguous, a beneficiary's status is determined by the terms of the contract itself.[1] *Permian Basin*, 63 N.M. at 7; *McKinney*, 84 N.M. at 35-54. Here, the title policy is unambiguous. It nowhere states or implies that Lamey was intended to directly benefit from the policy. For example, under the heading "COVERED RISKS" the policy provides:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation (the "Company") insures as of the Date of Policy and to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, **sustained or incurred by the insured** by reason of [ten enumerated risks].

(emphasis added). The policy expressly limits coverage to URELC as "the insured." No other term directly or impliedly states that Lamey would benefit. Had the policy listed Lamey as an additional insured, the case would be altered. It did not. By the policy's terms, Lamey is not a third party beneficiary, nor has the Trustee produced extrinsic evidence that he was. Instead, the Trustee argues that Lamey had a "huge financial stake in the contract" because he personally guaranteed the bank loan. A mere interest in a contract, however large, does not transform an incidental beneficiary into an intended one. Rather, there must be evidence, from the contract or from

---

[1] Under New Mexico contract law, a court may hear extrinsic evidence about contract formation and of relevant trade usage, course of dealing, and course of performance, if a party alleges that a term or expression is unclear or ambiguous. *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 508-09 (S. Ct. 1991); *see also Mark V. Inc. v. Mellekas*, 114 N.M. 778, 781 (S. Ct. 1993) ("An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity."). Here, neither party argues that the title policy is unclear such that parol evidence is necessary to determine the intent of the contracting parties.

-4-

extrinsic sources, that URELC intended Lamey to benefit directly from the title policy and told Fidelity of that intent. No such evidence exists.

As an incidental beneficiary, Lamey (and now the Trustee) cannot sue for breach of the policy. *Woody Inv., LLC v. Sovereign Eagle, LLC*, 362 P.3d 107, 116 (N.M. App. 2015) ("[a]s incidental beneficiaries, Plaintiffs are not entitled to recover under the contract."); *Fleet Mortgage Corp., v. Schuster*, 112 N.M. 48, 50 (S. Ct. 1991) ("As an incidental beneficiary, she had no right to recover from the accord"); *Permian Basin Inv. Corp.*, 63 N.M. at 7-8 (same).

In any event, there is no need for Lamey to enforce the title policy because URELC has sued to enforce it. To the extent Lamey suffered compensable harm by Fidelity's breach of contract, he would be made whole by any recovery to which URELC is entitled.[2]

Having no evidence from which a reasonable fact finder could conclude that Lamey was an intended beneficiary of the title policy, Fidelity is entitled to summary judgment that the Trustee lacks standing to bring the breach of contract claim.

C. Count 2: Constructive Fraud.[3]

In New Mexico, the tort of constructive fraud:

> *is a breach of legal* or equitable *duty* which, *irrespective of the moral guilt of the fraud feasor*, the law declares fraudulent because of its tendency to *deceive others*, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.

---

[2] Fidelity's obligation under the title policy is clear: "If the Company establishes the Title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligation with respect to that matter and shall not be liable for any loss or damage cause to the Insured. Elsewhere the policy states: "Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy."
[3] This claim and the others discussed below are brought against Fidelity on the theory that LCAT was Fidelity's agent. Agency issues will be addressed in a separate opinion.

*Scudder v. Hart*, 110 P.2d 536, 539 (N.M. 1941) (emphasis in original); *see also Barber's Super Markets, Inc. v. Stryker*, 84 N.M. 181, 186 (Ct. App. 1972) (citing *Scudder*); *Archuleta v. Kopp*, 90 N.M. 273, 276 (Ct. App. 1977) (quoting *Barber's Super Markets*).

Constructive fraud cases hinge on a duty of disclosure. *See, e.g., Smith v. Moore*, 2018 WL 6583367, at *1 (N.M. App.) (unpublished) (duty to disclose alleged defect in a house purchased by plaintiff); *Kipnis v. Jusbasche*, 388 P.3d 654, 655-56 (N.M. 2016) (alleged duty to disclose nolo plea to business partners); *Jones v. Auge*, 344 P.3d 989, 1000-01 (N.M. App. 2014) (failure to disclose bonuses paid to himself); *R.A. Peck, Inc. v. Liberty Federal Sav. Bank*, 108 N.M. 84, 87 (Ct. App. 1988) (duty to disclose availability of loan funds to contractor relying on same); *Rogers v. Stacy*, 63 N.M. 317, 320 (S. Ct. 1957) (one business partner had a duty to disclose material transactions to his other partner) *Archuleta v. Kopp*, 90 N.M. at 276 (duty to disclose defective fireplace to a blind buyer).[4]

The Trustee argues that LCAT had a duty to disclose to Lamey that LCAT was not going to require a release of the KZRV mortgage before closing the transaction. Fidelity counters that LCAT had no such duty. "Whether a duty exists is generally a question of law for the trial court to decide." *Peck,* 108 N.M. at 88. In *Peck*, a case involving several tort claims, including constructive fraud, the New Mexico Court of Appeals discussed how to determine whether a duty of disclosure exists:

> Generally, in instances where concealment or failure to disclose is alleged, such as in claims of fraudulent or negligent misrepresentation, the relationship existing between the parties that gives rise to the duty falls into three distinct classes:
> "1. Where there is a previous definite fiduciary relation between the parties.
> 2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.

---

[4] The difference between the tort of constructive fraud and the tort of negligent misrepresentation is that the former involves the breach of a legal duty while the latter does not. *See Bottrell v. Am. Bank*, 773 P.2d 694, 706 (Mont. 1989).

-6-
Case 18-01057-t    Doc 167    Filed 04/03/20    Entered 04/03/20 14:45:34 Page 6 of 12

> 3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. The contract of insurance is an example of this last class."

108 N.M. at 89 (quoting *Macon County Livestock Mkt, Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343, 349 (Tenn. App. 1986)); *see also Robertson v. Carmel Builders Real Estate*, 135 N.M. 641, 651 (Ct. App. 2003) (citing *Peck's* categories with approval); *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 12 (S. Ct. 1991) (citing *Peck's* second category with approval); *Wilburn v. Stewart*, 110 N.M. 268, 271 (S. Ct. 1990) (citing *Peck* with approval when holding that seller of RV business had no special relationship with buyer).

The Trustee does not discuss *Peck* or argue that he comes within one of *Peck's* three classes where a duty of disclosure arises. Instead, he argues that LCAT's disclosure duties arose because Lamey was URELC's majority member, manager, and guarantor.[5] The Trustee's proposed standard appears to be that every party to a business transaction has a duty of disclosure to everyone directly or indirectly affected. The list of such people is long: directors, officers, shareholders, creditors, guarantors, employees, members, managers, agents, contracting parties, etc. Adopting the Trustee's theory would be a significant departure from current New Mexico tort law. The departure is neither required nor desirable. As Justice Holmes said in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927), "The law does not spread its protection so far."[6]

---

[5] Guarantors are contingent creditors of the corporation. In *Weissman v. Weener*, 12 F.3d 84 (7th Cir. 1993), the Seventh Circuit held: *"*Guarantors are only contingent creditors. Under a guarantee, a creditor is permitted to seek recourse against a guarantor. If that occurs, the guarantor is then subrogated to the rights of the creditor, having an unpaid claim against the corporation." *Id.* at 87, citing *Mid-State Fertilizer Co. v. Exchange Nat. Bank of Chicago*, 877 F.2d 1333, 1336 (7th Cir. 1989) (no reason to treat guarantors differently than debt investors).

[6] Granted, Justice Holmes was ruling on a somewhat different issue, namely that a "tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong." 275 U.S. at 309. Nevertheless, the idea that liability should not be extended *ad infinitum* remains valid.

Case 18-01057-t    Doc 167    Filed 04/03/20    Entered 04/03/20 14:45:34 Page 7 of 12

Parties to a business transaction need to know who they are dealing with, who they owe duties to, and how far their potential liability extends. The Trustee's theory of duty would mean that parties to a business deal could never know who might sue them, claiming a breach of the duty of disclosure. Instead, the Court will follow *Peck*.

1. <u>Was there a previous definite fiduciary relation between the parties</u>? LCAT had no fiduciary duties to Lamey. The Trustee does not argue that such fiduciary duties existed. *The Restatement (Second) of Torts*, § 551, comment f, lists a number of relationships involving trust and confidence, e.g., executor and beneficiary, physician and patient, attorney and client, priest and parishioner. If LCAT and Lamey could be said to have had any kind of relationship at all (they never spoke or communicated in any way), it was nothing like a fiduciary relationship.

2. <u>Did Lamey have a contract with LCAT and expressly repose trust and confidence in LCAT</u>? Lamey was not a party to any contract with LCAT or Fidelity. No duty of disclosure could have arisen under this category of the *Peck* test.

3. <u>Was the contract or transaction intrinsically fiduciary and call for perfect good faith</u>? The parties to the transaction were URELC, Next Level, and LANB. LCAT was retained by them to act as the closing agent. LCAT also acted as Fidelity's agent in connection with issuing the title commitment and title policy. LCAT's dealing, or more accurately lack of dealing, with Lamey was not intrinsically fiduciary, nor did it call for perfect good faith.

Under *Peck*, LCAT had no duty to inform Lamey of Ms. Romero's regrettable decision to trust Maese Sr. and close the transaction without a release of the KZRV mortgage. Fidelity is entitled to summary judgment that the Trustee lacks standing to bring the constructive fraud claim.

C. <u>Count 3: Civil Conspiracy</u>.

Plaintiffs state in their motion to amend their complaint that "based on information revealed during discovery, Plaintiffs no longer intend to pursue a claim for civil conspiracy . . . ." Fidelity therefore is entitled to partial summary judgment on this count.

D.     Count 4: Professional Negligence.

To prevail on a claim for professional negligence, a plaintiff must prove: 1. Plaintiff's employment of the professional; 2. The professional's neglect of a reasonable duty; 3. The negligence resulted in and was the proximate cause of loss to the plaintiff. *Buke, LLC v. Cross Country Auto Sales, LLC,* 331 P.3d 942, 954 (N.M. App. 2014); *Hilley v. Cadigan*, 2020 WL 604972, at *9 (N.M. App.); *Encinias v. Whitener Law Firm*, 310 P.3d 611, 616 (N.M. 2013); *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 161-62 (S. Ct. 1993); *Akutagawa v. Laflin, Pick & Heer, P.A.*, 138 N.M. 774, 777 (S. Ct. 2005); *Rancho del Villacito Condos., Inc. v. Weisfeld*, 121 N.M. 52, 55-56 (S. Ct. 1992); Uniform Jury Instruction 13-2401 (legal malpractice).

Plaintiffs attempt to avoid this standard by relying on *Stotlar v. Hester*, 92 N.M. 26 (Ct. App. 1978). *Stotlar*, however, dealt with negligence by words, not professional negligence.[7] Count

---

[7] Negligence by words, sometimes referred to as negligent misrepresentation, *Stotlar,* 92 N.M. at 28, is defined as "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." 92 N.M. at 29 (quoting 3 Restatement of Torts (Second) § 522 (1977). It does not appear Lamey has a cause of action against LCAT for negligent misrepresentation because LCAT was not retained to supply information for guidance of others. *See, e.g.*, *Meyer v. Conlon*, 162 F.3d 1264, 1272 (10th Cir. 1998) (no viable negligent misrepresentation claim when defendants' representations were not made for the guidance of the plaintiff in his business). Further, omissions typically are not actionable as negligent misrepresentations. *See Restatement (Third) of Torts:* § 5 cmt. e ("A failure to speak, by itself, does not support liability under [§5]."

4 does not state a cause of action for negligent misrepresentation or negligence by words. *Stotlar* therefore is not helpful.

Focusing on the claim pled rather that some other claim, there is no dispute that Lamey never employed LCAT or Fidelity. Without that essential element, the Trustee's professional negligence claim fails. Fidelity is entitled to summary judgment that the Trustee lacks standing to bring this claim.

E.   Count 5: Unfair Trade Practices.

Plaintiffs sued LCAT and Fidelity for alleged violation of the New Mexico Unfair Trade Practices Act, N.M.S.A. § 57-12-1 et seq. Fidelity points out that the act only applies to sales of goods or services. *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot USA, Inc.*, 137 N.M. 524, 528 (Ct. App. 2005) (the legislature has chosen to give standing only to buyers of goods or services); *see also Gandydancer, LLC v. Rock House CGM, LLC*, 453 P.3d 434, 439 (S. Ct. 2019) (plaintiff must show both injury and that he falls within the zone of protected interests). Lamey did not buy a good or service from LCAT. Perhaps because of that, Plaintiffs did not respond to the motion for summary judgment on count 5. Fidelity is entitled to summary judgment that the Trustee lacks standing to bring this claim.

F.   Count 6: Unfair Insurance Practices.

Plaintiffs sued Fidelity under the Trade Practices and Frauds Act ("TPFA") of New Mexico's insurance code, N.M.S.A. § 59A-16-1 et seq. Fidelity argues it is entitled to summary judgment on the trustee's claim because Lamey did not buy an insurance policy and is not a person "covered by" the FTPA. Plaintiffs did not respond to the motion. The Court concludes that Lamey is not a person covered by the FTPA; he did not buy the title policy, is not insured under the policy,

and is not a third-party beneficiary. Fidelity is entitled to summary judgment that the Trustee lacks standing to bring this claim.

III. CONCLUSION

Lamey was neither a party to nor a third-party beneficiary of the title policy, so the Trustee cannot sue Fidelity for breach of contract. LCAT did not owe Lamey a duty to disclose that it trusted Maese Sr. to get the KZRV mortgage released. The professional negligence claim fails because Lamey never hired LCAT. The other claims are so weak that the Trustee either withdrew them or did not respond to Fidelity's summary judgment motion.

This is not a situation of a wrong without a remedy. LANB has been made whole under its mortgagee title policy, at significant cost to Fidelity. Any loss URELC may have suffered appears to have been mitigated as well. LCAT made a mistake when it relied on Maese Sr.'s promise to release the mortgage, but the mistake has been fixed. That should have been the end of it. Instead, the Trustee brought questionable theories of liability against Fidelity, asserting questionable "but for" damages theories. By doing so, the Trustee sought to recover far more than the loss suffered by the insureds. Tort law is designed to compensate injury, not to give windfalls to bystanders.[8]

By a separate order, the Court will enter a partial summary judgment in Fidelity's favor on the Trustee's Counts 1-6.

Although LCAT did not move for summary judgment on the Trustee's lack of standing, the Court's findings and conclusions apply with equal force to the Trustee's claims against LCAT. The Court therefore is inclined to grant LCAT summary judgment on the Trustee's claims. Any

---

[8] Some of the Trustee's claims against Fidelity remind the Court of onlookers who, seeing a car hit a city bus, climb onto the bus after the accident and start complaining of neck pains.

-11-
Case 18-01057-t    Doc 167    Filed 04/03/20    Entered 04/03/20 14:45:34 Page 11 of 12

party opposing or supporting that action may file additional briefing within twenty days of the entry of this Order.

 

_____
David T. Thuma
United States Bankruptcy Judge

Entered: April 2, 2020
Copies to: counsel of record