UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

BRYAN A. LAMEY,            No. 14-13729 ta7

    Debtor.

EDWARD MAZEL, chapter 7 trustee,
and UNITED REAL ESTATE LAS
CRUCES, LLC,

    Plaintiffs,

v.            Adv. No. 18-01057-t

LAS CRUCES ABSTRACT AND TITLE
COMPANY, FIDELITY NATIONAL
TITLE INSURANCE COMPANY, and
TCNM, LLC,

    Defendants.

## **OPINION**

Before the Court are cross-motions for summary judgment on whether Fidelity National Title Insurance Company can be held liable for the conduct of Las Cruces Abstract and Title Company ("LCAT"). Based on the undisputed material facts, the Court concludes that Fidelity cannot be sued in tort for LCAT's work as Fidelity's title agent. The Court further concludes that LCAT was not Fidelity's agent for the escrow services LCAT provided for a fee. Thus, Fidelity is entitled to partial summary judgment against Plaintiffs on counts 2, 3, 4, and 5 of their complaint.

### I.     FACTS

The Court incorporates by reference the Omnibus Findings of Fact for All Pending Motions for Summary Judgment, entered March 20, 2020, doc. 159.

## II.  DISCUSSION

A.  Summary Judgment Standards.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" thereby entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing substantive law." *Bird v. West Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, the Court is required to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

B.  The Vicarious Liability Claims.

Plaintiffs assert claims against Fidelity for constructive fraud (count 2); civil conspiracy (count 3); professional negligence (count 4); and unfair trade practices (count 5). There are no allegations in these claims that Fidelity took or omitted any action. Rather, each count ends with the allegation that "[a]s LCAT's principal, Fidelity is liable for the acts and omissions of LCAT." Thus, the extent and limits of LCAT's agency relationship to Fidelity are squarely at issue.

C.  General Principles of Agency.

1.  Principal and agent. "An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation." *Robertson v. Carmel Builders Real Estate*, 135 N.M. 641, 648 (Ct. App. 2003). A principal may be liable for the tortious conduct of its agent if the torts are committed in the scope

of the agency relationship. *Sanchez v. Securities Acceptance Corp.*, 57 N.M. 512, 516 (S. Ct. 1953).

    2.    <u>Actual authority</u>. "Actual authority is given to the agent by the principal in terms that are express, or in terms that are implied from words or conduct of the principal to the agent or from the circumstances of the relationship." *Comstock v. Mitchell,* 110 N.M. 131, 134 (S. Ct. 1990) (Ransom, J., specially concurring);[1] *see also Barron v. Evangelical Lutheran Good Samaritan Soc.*, 265 P. 3d 720, 725 (N.M. App. 2011) (quoting Ransom, J.). An agency relationship does not arise until the principal "manifests assent to [the agent] that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Maes v. Audubon Indemnity Ins. Group,* 142 N.M. 235, 240 (S. Ct. 2007) (internal quotation marks and citation omitted).

    3.    <u>Apparent authority</u>. A principal may be held liable for the acts of its agent if the principal clothed the agent with the "apparent authority" to act on the principal's behalf. *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 48 P.3d 50, 55 (N.M. 2002); *Robertson*, 135 N.M. at 649. The apparent authority doctrine is grounded in a theory of estoppel and detrimental reliance—in other words, as between two innocent parties, "the loss must fall upon the party" who bears responsibility for creating the misimpression of authority. *Vickers v. North Amer. Land Developers, Inc.*, 94 N.M. 65, 67 (S. Ct. 1980).

The apparent authority of an agent is determined by the acts of the principal, not the agent. A principal can be held liable for the acts of an alleged agent under an apparent authority theory if and only if the principal, by his acts or conduct, "has clothed the agent with the appearance of

---

[1] Implied authority comes with actual authority; it is the authority to do acts incidental to the expressly authorized acts. *Cooper v. Albuquerque Nat'l Bank*, 75 N.M. 295, 302 (S. Ct. 1965).

authority." *Chevron Oil Co. v. Sutton*, 85 N.M. 679, 682 (S. Ct. 1973); *Romero v. Mervyn's*, 109 N.M. 249, 253 (S. Ct. 1989) (quoting *Chevron*). Even then, a third party has an obligation to "use reasonable diligence and prudence to ascertain whether the agent is acting within the scope of [its] powers." *Diversified Dev. & Inv. Inc. v. Heil*, 119 N.M. 290, 297 (S. Ct. 1995) (citing *Comstock*, 110 N.M. at 132); *see also Bodell Const. Co. v. Stewart Title Guar. Co.*, 945 P.2d 119, 124 (Utah App. 1997) ("[O]ne who deals exclusively with an agent has the responsibility to ascertain that agent's authority despite the agent's representations.").

D.  LCAT's Dual Roles as Title Agent and Closing/Escrow Agent.

Title insurers like Fidelity, doing business in New Mexico, are governed by Article 30 of the New Mexico Insurance Code, N.M.S.A. § 59A-30-1 et seq. Title agents or "producers"[2] like LCAT, on the other hand, are governed by Article 12 of the Insurance Code, N.M.S.A. § 59A-12-1 et seq. In particular, N.M.S.A. § 59A-12-13 applies to title insurance producers. Escrow companies are governed by the Escrow Company Act, N.M.S.A. § 58-22-1 et seq.

It is common for title companies to act as both the local title insurance agent for one or more title insurers (e.g. Fidelity or Stewart Title Insurance Company) and also as an escrow company, providing closing and escrow services for a fee. *See, e.g., Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 736 (D. Md. 2008) ("An issuing title insurance agent may, in accordance with an agency contract, wear 'two hats,' one as an *agent* to issue or sell title insurer's insurance policies, and the other as a settlement agent to conduct closings *on his or her own behalf*.") (emphasis in original).

---

[2] The Insurance Code was amended effective July 1, 2017 to, inter alia, substitute the word "producer" for "agent" in many places. *See, e.g.*, N.M.S.A. § 59A-12-13.

The fact that a single company both "produces" title insurance business for an insurer and generates fee income for itself by providing escrow services "does not make the title insurance company liable for the mishandling of [a] real estate closing." *Sommers v. Smith and Berman, P.A.*, 637 So.2d 60, 62 (Fla. App. 1994); *see also Proctor*, 579 F. Supp. 2d at 736 ("[T]he title insurer is responsible only for the title insurance issued; it cannot be held liable for the agent's participation in related closings or provision of escrow services.").

The Court must differentiate between claims based on LCAT's actions as Fidelity's title agent and LCAT's actions as an escrow company hired by the parties to the transaction.

E.  <u>Except for a Claim Under the Title Policy, Plaintiffs Cannot Sue Fidelity for LCAT's Actions Taken as Title Agent</u>.

There is no question that LCAT was Fidelity's local title agent/producer in the transaction at issue. Less clear, however, is whether the holder of a title policy can sue the insurer in tort if there is a title problem caused by the local title agent's negligence. The case law is split and New Mexico appellate courts have not yet weighed in.

In *More Than They Bargained For: Are Title Insurance Companies Liable in Tort for Undisclosed Title Defects?*, 45 Cath. U.L. Rev. 71 (1995), Mr. James Bruce Davis said:

> ("[A]uthorities disagree on whether a title insurance company, in issuing title commitments and policies, has undertaken a distinct duty to provide its insured with title information."). "Courts that view title insurance companies as suppliers of information tend to hold that the companies are subject to the rules of tort liability." [citation omitted] "Courts that do not view title insurance companies as suppliers of information usually find tort principles inapplicable on grounds that the title insurance policy provides both the source and measure of the company's liability." [citation omitted].

45 Cath. U.L. Rev. at 75.

For examples of cases holding that the policy owner may sue the issuer in tort, see *Jarchow v. Transamerica Title Ins. Co.*, 122 Cal. Rptr. 470, 476 (Cal. App. 1975) (overruled by statute);

*Ford v. Guarantee Abstract and Title Co., Inc.*, 553 P.2d 254, 266 (Kan. 1976); and *Malinak v. Safeco Title Ins. Co. of Idaho*, 661 P.2d 12, 16 (Mont. 1983). These cases are premised on the notion that the buyer of a title policy is relying on the insurer and its local agent to conduct a reasonable search of the real estate records and provide accurate information.

Cases holding that the policy holder is limited to its contract rights *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 N.J. 517, 535 (1989) (a title insurer's liability is limited to the issued policy; the insurer is not liable in tort for its agent's negligence); *Focus Inv. Assoc., Inc. v. American Title Ins. Co.*, 992 F.2d 1231, 1236 (1st Cir. 1993) (under Rhode Island law, insured has no negligence claim against title insurer); *Culp Const. Co. v. Buildmart Mall*, 795 P.2d 650, 653 (Utah 1990) (the prevailing view is not to hold title insurers liable in tort); *Anderson v. Title Ins. Co.*, 103 Idaho 875, 879 (1982) (court refused to impose the liabilities of an abstractor on a title insurance company because it issued a preliminary title report); and *NE Properties, Inc. v. Chicago Title Ins. Co.* 660 A.2d 926, 928 (Me. 1995) (courts have uniformly declined to hold a title insurance company liable in tort for a negligent title search).

In *Columbia Town Center Title Co. v. 100 Investment Ltd. Pty.*, 203 Md. App. 61 (2012), aff'd in part and reversed in part, 430 Md. 197 (2013), the Maryland Court of Appeals held:

> In Maryland, "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Jones v. Hyatt Ins. Agency, Inc.,* 356 Md. 639, 654–55, 741 A.2d 1099 (1999); *Heckrotte v. Riddle,* 224 Md. 591, 595, 168 A.2d 879 (1961). If an independent basis for a tort claim was not required, all contract duties would become legal duties, and "[f]ollowed to its legal conclusion, [that] would make every breach of contract a tort." *Russell & Co. v. Polk County Abstract Co.,* 87 Iowa 233, 54 N.W. 212, 213 (1893). As the United States Supreme Court has cautioned, should a tort duty of care arise from a contractual obligation alone, "contract law would drown in a sea of tort." *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 866, 106 S. Ct. 2295, 90 L.Ed.2d 865 (1986).

203 Md. App. At 76. The court held that neither a title insurer nor its local title company is liable in tort for negligently searching title; the insured was limited to a claim under the title policy.[3]

The Court predicts that the New Mexico appellate courts would not allow the insured under a title policy to sue the insurer in tort if the insured believes the local title agent was negligent in its title work. New Mexico law prevents an insured from suing the title company for negligently searching the title records.[4] Thus, the rationale used in some other jurisdictions to allow tort claims against the insurer does not apply in New Mexico. Further, title insurance is heavily regulated in New Mexico. The laws and regulations extend to the form of contract that may be used and the premiums insurers are allowed to charge. The regulatory regime appears designed to protect both insurers and insureds. Allowing insureds to bring tort claims against insurers in addition to contract claims would disrupt the regulatory and pricing scheme enacted by the legislature.

The Court concludes that Plaintiffs' claims 2-5 against Fidelity fail to the extent they are based upon LCAT's alleged negligence when acting as Fidelity's title agent. Instead of being able to sue Fidelity for vicarious tort liability, United Real Estate Las Cruces, LLC ("URELC") is limited to a claim under the title policy. This ruling includes the claim that Fidelity is vicariously liable for LCAT's alleged violation of the New Mexico Unfair Trade Practices Act, N.M.S.A. § 57-12-1 et seq.[5]

---

[3] The holding was reversed in part by the Maryland Supreme Court, which allowed plaintiff to sue the local title company for negligence but not the title insurer. 430 Md. at 232.
[4] N.M.S.A. § 59A-30-11(A))
[5] Plaintiffs' attempt to concoct an unfair trade practice claim from Ms. Romero's reliance on Maese Sr's promise to get a release of the KZRV mortgage borders on frivolous, if it does not cross the line.

F. <u>LCAT Was Not Fidelity's Agent When LCAT Provided Escrow Services</u>.

Obtaining mortgage releases is one of the jobs of an escrow company hired to close a commercial real estate transaction. *See* N.M.S.A. § 58-22-3(C) and (D);[6] *see also*; *Union Sav. Bank v. Lawyers Title Ins. Corp.*, 946 N.E. 2d 835, 838, 841 (Ohio App. 2010) ("the main function of an escrow agent is to hold documents and funds until the conditions of the purchase agreement are met whereupon the escrow agent releases the documents and funds"); *Flagstar Bank, FSB v. Walker*, 451 S.W.3d 490, 503 (Tex. App. 2014) (company acting only as a title agent, as both escrow and title agent, had no obligation to satisfy prior liens); *Norcon Builders, LLC v. GMP Homes VG, LLC*, 254 P.3d 835, 845 n.16 (Wash. App. 2011) (escrow agent's duties included obtaining partial releases of deeds of trust). It is undisputed that LCAT did not insist on a release of KZRV mortgage as a condition to closing. Plaintiffs allege that LCAT was acting as Fidelity's agent when this escrow service omission occurred, and therefore that Fidelity is vicariously liable for any ensuing damages.

    1. <u>LCAT had no actual authority to represent Fidelity when LCAT provided escrow services for a fee</u>. Plaintiffs assert that LCAT had actual authority to act on Fidelity's behalf when LCAT provided escrow services to the parties. Not so. In New Mexico, the scope of a title agent's actual authority is defined by an "agency agreement." N.M.S.A. § 59A-30-3(A). The agency agreement between Fidelity and LCAT limited LCAT's authority to issuing "commitments,

---

[6] Defining an "escrow company" as a person engaged in the business of receiving "escrows" for compensation, as defining "escrows" as "any transaction in which one person, for the purpose of effecting the sale, transfer, encumbrance or lease of real or personal property to another person or for the purpose of making payments under any encumbrance of the property, delivers any written instrument, money, evidence of title to real or personal property or other thing of value to a third person to be held by that third person until the happening of a specified event or the performance of a prescribed condition, when the instrument, money, evidence of title or thing of value is to be delivered by the third person to a grantee, grantor, promisee, promisor, obligee, obligor, bailee or bailor or to any of that person's agents or employees, pursuant to the written escrow instructions."

binders, policies, and endorsements." These activities fall squarely within the business of title insurance. N.M.S.A. § 59A-30-3(C). At the same time, the agency agreement expressly *prohibited* LCAT from acting as Fidelity's agent "with regard to escrow matters or the settlement of real estate transactions."

Although New Mexico's appellate courts have not considered the issue, courts in other jurisdictions have uniformly rejected the argument that a local title agent/producer has actual authority to act for a title insurer in providing escrow services for a fee. *See, e.g., Nat'l Mortg. Warehouse, LLC v. Bankers First Mortg. Co.*, 190 F. Supp. 2d 774, 780 (D. Md. 2002) (rejecting an "actual agency" theory of an insurer's vicarious liability for the escrow-related conduct of its local title agent because the agency agreement expressly prohibited the local agency from conducting escrow business on behalf of the insurer); *Cameron County Sav. Ass'n v. Steward Title Guar. Co.*, 819 S.W.2d 600, 603 (Tex. App. 1991) (local title company had no express or implied actual authority to conduct escrow services on behalf of an insurer where the agency agreement expressly limited the title company's authority to executing title policies); *Wells Fargo Bank, N.A. v. Old Republic Nat. Title Ins. Co.*, 2009 WL 4927145, at *7 (E.D. Va.), aff'd, 413 F. App'x 569 (4th Cir. 2011) (same); *Bluehaven Funding, LLC v. First Am. Title Ins. Co.,* 594 F.3d 1055, 1059 (8th Cir. 2010) (same); *Bergin Financial, Inc. v. First American Title Co.*, 2008 WL 268823, at *1 (E.D. Mich.), aff'd, 397 Fed. Appx. 119 (6th Cir. 2010) (same); *Northeast Credit Union v. Chicago Title Ins. Co.*, 2010 WL 4851075 at *2 (D.N.H.) (same); *Universal Bank v. Lawyers Title Ins. Corp.*, 73 Cal. Rptr. 2d 196, 198 (Ct. App. 1997) (same). The Court agrees with this line of cases. The alternative would require mis-reading or ignoring the clear terms of the agency agreement.

LCAT had no actual authority to act as Fidelity's agent when LCAT provided escrow services to the parties.

2. <u>LCAT had no apparent authority to act as Fidelity's agent for escrow services</u>.

Plaintiffs also argue that Fidelity clothed LCAT with the apparent authority to act for Fidelity when LCAT provided escrow services. Plaintiffs cite to three documents in support of their argument: the title commitment, the title policy, and an invoice from LCAT to United Real Estate Holding. Contrary to Plaintiffs' argument, these documents do not create a fact issue about apparent authority.

First, two of the documents (the title policy and the invoice) were issued *after* the closing. "Clothing" an agent with apparent authority must occur *before* the plaintiff's reliance on the apparent authority, not after. *Chevron*, 85 N.M. at 682 (apparent authority arises when third parties are justified in believing that the agent is acting within his authority). In this case, the transaction "closed" no later than September 6, 2012.[7] Lamey, the Maeses, and their spouses attended the closing in Albuquerque. The title policy was issued the next day, i.e. September 7, 2012. Thus, Plaintiffs could not have relied on the title policy as evidence of LCAT's apparent authority to act for Fidelity.

Similarly, the invoice, dated September 6, 2012, was mailed that day from Las Cruces to Lamey's house in Albuquerque. Plaintiffs could not have seen the invoice until after the closing. In fact, there is no evidence in the record that they ever saw the invoice before this litigation began.

Second, all three documents were created by LCAT, not Fidelity. The appearance of authority must come from the principal rather than the agent. *See, e.g., Bodell*, 945 P.2d at 124 (a title company's use, on its letterhead and settlement statements, of a title insurer's name did not support a theory of apparent agency because "[a]ny appearance of authority to act as [the insurer's]

---

[7] The promissory note, mortgage, and guarantees were signed August 30, 2012. The deed from Next Level was signed September 6, 2012.

agent in escrow, closing, or settlement transactions came from [the title company], not [the insurer]"); *Dietrich Family Irrevocable Trust v. Chicago Title Ins. Co.*, 2005 WL 2932060, at *2-3 (E.D. Mich. 2005) (a title company's website advertisement of itself as "an exclusive agent for" a title insurer did not support a theory of apparent authority); *Fidelity. Nat. Title Ins. Co. v. Cole Taylor Bank*, 878 F. Supp. 2d 453, 457–58 (S.D.N.Y. 2012) (an insurance company's right to audit the escrow accounts of the title company did not support the theory that the title agent had apparent authority to close transactions on behalf of the insurance company).

Plaintiffs' entire apparent authority argument therefore rests entirely on the title commitment, which, although issued by LCAT rather than Fidelity, was at least created before the closing. Did the title commitment clothe LCAT with apparent authority to act as Fidelity's agent when providing escrow services? Courts in other jurisdictions have ruled against similar apparent authority arguments. *See, e.g., Wells Fargo v. Old Republic*, 2009 WL 4927145, at *7 (title insurer had no contact with plaintiff, so could not have clothed the local company with apparent authority to act on insurer's behalf when providing escrow services); *Gold v. Old Republic Nat'l Title Ins. Co (In re Taneja)*, 2010 WL 4882826, at *5 (Bankr. E.D. Va.) (citing and following *Wells Fargo v. Old Republic*); *First Am. Title Ins. Co. v. First Alliance Title, Inc.,* 718 F. Supp. 2d 669, 680 (E.D. Va. 2010) (citing and following *Wells Fargo v. Old Republic*); *Proctor v. Metro. Money Store Corp.,* 579 F. Supp. 2d 724, 738 n.23 (D. Md. 2008) (no allegation of contact with insurer, so there could be no apparent authority to act as insurer's agent for closing services); *Fidelity Nat'l Title Ins. Co. v. Mussman,* 930 N.E. 2d 1160, 1165 (Ind. App. 2010) (same); *Business Bank of St. Louis v. Old Republic Nat'l Title Ins. Co.,* 322 S.W. 3d 548, 555 (Mo. App. 2010) (title commitment is not evidence of apparent authority).

The Court agrees with these decisions and holds that in this case the evidence of apparent authority is completely lacking. The title commitment, title policy, and invoice are reeds entirely too slender to support Plaintiffs' argument. Were the Court to hold otherwise, every title insurer doing business in New Mexico would be vicariously liable for the negligence of their local title companies when they (as so often happens) don their other hat and provide escrow services for a fee.

### III. CONCLUSION

While LCAT clearly was Fidelity's title insurance agent, Plaintiffs cannot sue Fidelity in tort for LCAT's alleged negligence in performing its title agent duties. Just as clearly, LCAT was not Fidelity's agent when LCAT provided escrow services to URELC and others. Fidelity therefore is entitled to summary judgment on Plaintiffs' counts 2, 3, 4, and 5 of the complaint.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 15, 2020
Copies to: Counsel of Record