UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

BRYAN A. LAMEY,

     Debtor.                                                    No. 14-13729 ta7

EDWARD MAZEL, chapter 7 trustee,
and UNITED REAL ESTATE
LAS CRUCES, LLC,

     Plaintiffs,

v.                                                                            Adv. No. 18-01057-t

LAS CRUCES ABSTRACT AND TITLE
COMPANY, FIDELITY NATIONAL
TITLE INSURANCE COMPANY, and
TCNM, LLC,

     Defendants.

## **OPINION**

     Before the Court is Plaintiffs' motion for partial summary judgment that defendant Las

Cruces Abstract and Title Company ("LCAT") was negligent in its handling of a loan and purchase

transaction closing. Plaintiffs also seek a partial summary judgment that defendant Fidelity

National Title Insurance Company is vicariously liable because LCAT was Fidelity's agent. LCAT

counters that there are fact issues about its alleged negligence, while Fidelity argues that LCAT

was not acting as its agent when it took the allegedly negligent actions. The Court finds that the

motion is not well taken and should be denied.

# I.     UNDISPUTED MATERIAL FACTS

The facts relevant to the motion are set forth in the Court's Omnibus Findings of Fact, entered March 20, 2020, doc. 159. The facts are incorporated by reference. Capitalized terms not defined in this opinion have the meanings ascribed to them in the omnibus findings.

# II.     DISCUSSION

## A.     Summary Judgment Standards.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" thereby entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). In ruling on a motion for summary judgment, the Court is required to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## B.     The Court Has Disposed of the Trustee's Claims.

The Court earlier ruled that the trustee lacks standing to assert claims against Fidelity and LCAT. See the Court's opinion entered April 3, 2020, doc. 167 (the "Standing opinion"). The Court therefore will only address URELC's negligence claims.

## C.     Fidelity is Not Liable to URELC for LCAT's Alleged Errors.

The issue of Fidelity's potential vicarious liability for LCAT's conduct is addressed in the Court's April 15, 2020, opinion on agency, doc. 173 (the "Agency opinion"). There, the Court held that Fidelity cannot be sued in tort for LCAT's work as Fidelity's title agent, and that LCAT was not Fidelity's agent for the closing services LCAT provided to URELC and others. Based on that

ruling, URELC's request for partial summary judgment that Fidelity is vicariously liable for LCAT's alleged negligence must be denied. The Court is inclined to grant summary judgment in favor of Fidelity on this claim.

D.    URELC Has No Claim Against LCAT for its Actions as Fidelity's Title Insurance Agent.

As stated in the Agency opinion, URELC does not have a cause of action against LCAT in connection with LCAT's actions as Fidelity's local title agent. To that extent, URELC's motion for summary judgment on LCAT's negligence is not well taken. The only remaining claim, accordingly, is URELC's professional negligence claim against LCAT in connection with LCAT's closing agent duties.

E.    Fact Issues Prevent Entry of Summary Judgment in URELC's favor on its Professional Negligence Claim Against LCAT as Closing Agent.

When local title agencies serve as closing agents in a real estate transaction, they may be liable in tort if they fail to perform their duties with reasonable care. *See, e.g.,* Bruce Davis, *More Than They Bargained For: Are Title Insurance Companies Liable in Tort for Undisclosed Title Defects*?, 45 Cath. U.L. Rev. 71, 74 (1995) (if a company serves as a settlement agent in a real estate transaction, the company may be liable in tort if it fails to perform its duties with reasonable care); *Aronoff v. Lenkin Co.*, 618 A.2d 669, 687 (D.C. App. 1992) (title company had disclosure duties because it served as the settlement agent); *Culp Constr. Co. v. Buildmart Mall*, 795 P.2d 650, 654-55 (Utah 1990) (title company could be liable as a settlement agent for failing to carry out the lender's closing instructions).[1]

1.    Elements of a Professional Negligence Claim.

---

[1]The rule could be different if the parties had signed a contract that specified the damages awardable in the event of a default by the closing agent. As there was no such agreement here, it seems reasonable to suppose that URELC's recourse would be a tort claim for negligence.

Generally, a plaintiff must prove the following elements to prevail on a claim for professional malpractice based on negligence: "(1) the employment of the defendant [professional]; (2) the defendant [professional's] neglect of a reasonable duty; and (3) the negligence resulted in and was the proximate cause of loss to the plaintiff." *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor,* 1993–NMCA–008, ¶ 9, 115 N.M. 159, 848 P.2d 1086. Professional malpractice based upon breach of duty concerns violations of a standard of conduct. *See Spencer v. Barber,* 2013–NMSC–010, ¶ 17, 299 P.3d 388.

*Buke, LLC v. Cross Country Auto Sales, LLC*, 331 P.3d 942, 954 (N.M. App. 2014).[2]

2.    Is LCAT a Professional? There is no question that URELC and others employed LCAT to provide closing services. Is LCAT a professional? That is not clear. Historically, the "honorable professions" have included medicine, law, accounting, architecture, and engineering. Black's Law Dictionary (10th ed.) defines a professional as "someone who belongs to a learned profession or whose occupation requires a high level of training and proficiency." In New Mexico, insurance brokers are considered professionals. *New Mexico Public Schools Ins. Authority v. Arthur J. Gallagher & Co.*, 145 N.M. 316, 322 (2008). Whether closing agents are professionals is an open question.

3.    Duty to Provide Reasonable Services. Every professional has a duty to its clients to provide professional services that are reasonable under the circumstances, and as established by prevailing professional standards. *Lester v. Hall*, 970 P.2d 590, 594 (N.M. 1998); *Henning v. Parsons*, 623 P.2d 574, 579-80 (N.M. App. 1980). "Proof of the standard of conduct is necessary to maintain an action for malpractice." *Spencer v. Barber*, 299 P.3d 388, 395 (N.M. 2013). The standard of conduct in a professional negligence case "is measured by the duty to apply the

---

[2] The elements of an ordinary negligence claim are similar: (1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) the breach of duty as cause of the injury. *Zamora v. St. Vincent Hosp.*, 335 P.3d 1243, 1249 (N.M. 2014), citing *Herrera v. Quality Pontiac*, 134 N.M. 43, 48 (S. Ct. 2003). The cause has to be proximate. *See* NMRA, Civ. UJI 13-305 (Causation (*Proximate cause*).

knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances." *Adobe Masters, Inc. v. Downey,* 118 N.M. 547, 548 (S. Ct. 1994). Thus, if LCAT is a professional, it owed a duty to URELC to close the transaction consistent with the knowledge, care, and skill of a reasonably well-qualified closing agent.

4. <u>Neglect of That Duty</u>. URELC argues that LCAT's conduct fell below a reasonable standard of care when it failed to insist on a release of the KZRV Mortgage before closing the transaction and when it failed to tell URELC that the KZRV mortgage was not going to be released at closing.

URELC's first theory of breach, i.e., failure to insist that the KZRV mortgage be released before closing, may well be true when viewed from the perspective of LANB. There is no evidence that Maese Sr. was LANB's agent or that LANB had any idea the KZRV Mortgage might not get released. LANB was not privy to Maese Sr.'s negotiations with KZRV or his request that the transaction be closed without a release of the KZRV Mortgage. LANB was harmed by the failure to release the KZRV Mortgage, and Fidelity has mitigated that harm.

The issue is different, however, when viewed from the perspective of URELC. What if URELC (acting through its agent Robert Maese Sr.) told LCAT to close the transaction without the release? Can URELC claim LCAT was negligent for complying with URELC's direction?[3] That seems unlikely. The issue therefore hinges on whether Maese Sr. was URELC's agent. If he was, URELC is not entitled to a partial summary judgment that LCAT was negligent, although LCAT may be entitled to summary judgment that it was *not* negligent.

---

[3]If Maese Sr. was URELC's agent, then URELC's negligence theory would be reminiscent of Eric "Otter" Stratton's line from *National Lampoon's Animal House* (Universal Pictures 1978): "You f***ed up. You trusted us!"

Facts issues also prevent entry of summary judgment on LCAT's alleged duty to disclose to URELC that it was closing the transaction without the KZRV mortgage release. Where the nature of the relationship between the parties gives rise to a duty to disclose material facts, the failure to do so may constitute an actionable breach.[4] *See, e.g.*, *Robertson v. Carmel Builders Real Estate*, 92 P.3d 653, 663 (N.M. App. 2003); *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 766 P.2d 928, 932 (N.M. App. 1988); *Provencio v. Wenrich*, 261 P.3d 1089, 1095 (N.M. 2011); *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 976 P.2d 1, 14 (N.M. 1998); *Delgado v. Costello*, 580 P.2d 500, 503 (N.M. App. 1978). The duty of disclosure, however, only applies to facts the plaintiff did not know. *See, e.g., Bills v. Hannah, Inc.*, 230 Mont. 250, 253 (S. Ct. 1988) (realtor has no duty to disclose what the seller already knows); *Mallory v. Watt*, 100 Idaho 119, 122-23 (1979) (same); *West Side Transport, Inc. v. Fishel*, 669 N.W.2d 262, at *6 (Iowa App. 2003) (same); *see also* Restatement (Second) of Torts § 551 cmt. m. (defendant's knowledge of the fact negates any duty to disclose). Here, if Maese Sr. was URELC's agent, then URELC knew more about the KZRV Mortgage than LCAT, so LCAT would have had no duty of disclosure.

5. <u>Loss</u>. URELC borrowed $1,650,000 from LANB. When URELC and the other United Entities defaulted, LANB foreclosed its first mortgage, sold the mortgaged property, and got a deficiency judgment against the borrowers of about $515,000, plus interest of about $250,000. URELC claims the entire deficiency judgment liability as damages.[5]

---

[4] Plaintiffs have not pleaded a claim for negligent misrepresentation—a claim distinct from ordinary or professional negligence. *See e.g., Barrington Reinsurance Ltd. v. Fidelity Nat'l Title Ins. Co.*, 172 P.3d 168, 172 (N.M. App. 2007) (distinguishing a claim of negligence from a claim of negligent misrepresentation—which is founded on the supply of false information for the guidance of another in a business transaction when the recipient relies to his detriment on the false information provided).

[5] If URELC got and collected a judgment against defendants, the first $755,000 would have to be paid to LANB, until its claim was paid in full. Any excess could then be "upstreamed" to the estate. Any recovery of less than $755,000 would have no benefit to the estate.

Case 18-01057-t    Doc 197    Filed 05/14/20    Entered 05/14/20 10:53:33 Page 6 of 10

6.     <u>Proximate Causation</u>. A critical question is whether LCAT's acts or omissions proximately caused URELC's claimed loss. Without proof of proximate cause, a negligence claim cannot survive. *See, e.g., Paez v. Burlington N. S.F. Ry.*, 362 P.3d 116, 122 (N.M. App. 2015) ("Absent the element of proximate cause, a claim for negligence fails regardless of the presence of the remaining elements of the cause of action."). Proximate cause is

> that which, in a natural or continuous sequence, produces the injury and without which the injury would not have occurred. . . . [It] encompasses whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury[.]

*Id.* at 121 (citations omitted). Foreseeability is an integral requirement in a finding of proximate cause. *Herrera v. Quality Pontiac*, 73 P.3d at 186 ("Integral to both [duty and proximate cause] is a question of foreseeability"). Although proximate cause generally is a fact issue, *Paez*, 362 P.3d at 121, "proximate cause becomes an issue of law "when the facts are undisputed and the reasonable inferences from those facts are plain and consistent." *Id.*, quoting *Lujan v. N.M. Dep't of Transp.*, 341 P. 3d 1 (N.M. App. 2015). In such cases it is within the Court's purview to declare, as a matter of law, that the plaintiff's injuries were not proximately caused by the defendant's conduct. *Paez*, 362 P.3d at 121-22.

URELC's theory is, essentially, that if LCAT had told URELC about the LZRV Mortgage, URELC would not have gone through with the closing. If the closing had not occurred, URELC would never have borrowed money from LANB and thus would not now be liable for the large deficiency judgment.

There are a number of problems with this theory. First, it was not foreseeable that Ms. Romero's decision to "close around" the KZRV Mortgage[6] would result in LANB's deficiency

---

[6] Maese Sr. assured Ms. Romero that a release of the mortgage would be forthcoming.

judgment against URELC. URELC does not claim that the KZRV Mortgage caused it to default, or even to lose money. The only evidence on this point is to the contrary—the KZRV mortgage was a benefit to URELC insofar as it allowed URELC to obtain post-closing "floorplan" financing.

Second, URELC does not argue that the KZRV Mortgage prompted LANB to bring the foreclosure action. Rather, the evidence shows that LANB brought its action only after URELC shut down operations and defaulted on the loan payments. In fact, it was only after LANB filed suit that it discovered the KZRV Mortgage was still of record.

Third, Fidelity paid KZRV and got the mortgage released, at significant expense to Fidelity. URELC therefore cannot claim damages based on the reduced value of the Property caused by the KZRV Mortgage.

Fourth, even a "causation in fact" theory is questionable. If the Court finds that Maese Sr. was URELC's agent, then there would be no causal link of any kind, let alone a proximate cause, as URELC would have closed in full knowledge of the KZRV mortgage.

In any event, "causation in fact" is not good enough. Had Lamey not met Maese Jr., URELC would not have suffered a loss. Had Lamey not sold his accounting business for many millions of dollars, URELC would not have suffered a loss. Had LANB declined the loan, URELC would not have suffered a loss. Causation in fact encompasses a nearly infinite number of events,[7] few of which are proximate to URELC's alleged losses. LCAT's actions may, or may not, have been a cause in fact, but they do not appear to have been the proximate cause of URELC's loss.

---

[7] "For the want of a nail the shoe was lost, For the want of a shoe the horse was lost, For the want of a horse the rider was lost, For the want of a rider the battle was lost, For the want of a battle the kingdom was lost, And all for the want of a horseshoe-nail." Benjamin Franklin, *The Way to Wealth* (1758).

In sum, the Court is inclined to grant LCAT summary judgment on the negligence claim because evidence of proximate cause is lacking. Based on the current record, URELC's losses do not appear to have been caused by LCAT or the KZRV Mortgage. Rather, the proximate causes of URELC's losses appear to have been a poor business model, poor management, a lack of capital, an unfavorable business climate, and/or disagreement or misunderstanding among the owners.

F.    Additional Briefing.

The parties are now briefing whether there are genuine issues of material fact about Maese Sr.'s role as URELC's agent in this transaction. If the Court finds that Maese Sr. was URELC's agent, it is inclined to enter summary judgment in LCAT's favor that it did not breach its duty of reasonable care to URELC. Similarly, the Court is inclined to grant LCAT summary judgment that LCAT's acts and omissions did not proximately cause URELC's alleged damages. Finally, the Court is inclined to grant Fidelity summary judgment on Plaintiffs' negligence claims for the reasons set out in the Standing and Agency opinions. The parties may submit additional briefing on these issues within 21 days from the date hereof.


III.    CONCLUSION

The trustee has no negligence claim against either Fidelity or LCAT. Plaintiffs have no negligence claim against Fidelity. URELC's only colorable claim against LCAT is for breach of its duties as URELC's closing agent. Fact issues prevent entry of summary judgment on that claim. Further, the Court is inclined to grant summary judgment in LCAT's favor on the negligence claim because of a lack of evidence that LCAT's acts or omission proximately caused any damages to URELC. Finally, the Court is inclined to grant summary judgment in LCAT's favor if it finds that

LCAT is entitled to summary judgment that Maese Sr. was URELC's agent. Additional briefing

on these issues will be allowed. The Court will enter a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 14, 2020
Copies to: counsel of record