UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

BRYAN A. LAMEY,

    Debtor.                                                                No. 14-13729 ta7

EDWARD MAZEL, chapter 7 trustee,
and UNITED REAL ESTATE
LAS CRUCES, LLC,

    Plaintiffs,

v.                                                                                Adv. No. 18-01057-t

LAS CRUCES ABSTRACT AND TITLE
COMPANY, FIDELITY NATIONAL
TITLE INSURANCE COMPANY, and
TCNM, LLC,

    Defendants.

**OPINION**

    Plaintiffs sued defendant Fidelity National Title Insurance Company for allegedly violating the New Mexico Unfair Insurance Practices Act, NMSA § 59A-16-1 et seq. (the "UIPA"). Before the Court is Fidelity's motion for partial summary judgment on the claim. The Court concludes that Fidelity's motion is well taken and should be granted.

                I.        UNDISPUTED MATERIAL FACTS

    Most of the facts relevant to the motion are set forth in the Court's Omnibus Findings of Fact, entered March 20, 2020, doc. 159. The facts are incorporated by reference. Capitalized terms not defined in this opinion have the meanings ascribed to them in the omnibus findings. Additional material facts are provided in the Court's discussion of the issues to which they relate. The Court

also took judicial notice of its own docket and the docket of the state court foreclosure action brought by KZRV.

## II. DISCUSSION

A. Summary Judgment Standards.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" thereby entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, the Court is required to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50.

B. The New Mexico UIPA.

New Mexico's UIPA, based on a Model Unfair Insurance Practices Act drafted by the National Association of Insurance Commissioners, regulates trade practices in the New Mexico insurance industry "by defining, or providing for determination of, practices in this state which constitute . . . unfair or deceptive acts or practices." NMSA § 59A-16-2. A person "who has suffered damages as a result of a violation of [the UIPA] by an insurer or agent" may recover

-2-
Case 18-01057-t    Doc 216    Filed 07/02/20    Entered 07/02/20 10:45:24 Page 2 of 10

actual damages. NMSA § 59A-16-30. Attorney's fees and punitive damages may also be awarded under certain circumstances. *Id.*; NMRA Civ. UJI 13-1718.

C.    <u>The Misrepresentation Claim</u>.

URELC[1] asserts that Fidelity violated two sections of the UIPA. The first is § 59A-16-4(A),[2] which provides:

> No person shall make, publish, issue or circulate any estimate, illustration, circular, statement, sales presentation or comparison which:
>     A. misrepresents the benefits, advantages, conditions or terms of any policy;
> . . .

URELC argues that Fidelity violated this section when it issued the Owner's Policy without obtaining a release of the KZRV Mortgage. URELC asserts:

> Fidelity stated that it would issue policies if the Requirements were complied with. One of the Requirements was to record a release of the KZRV Mortgage, which was never completed. Thus, Fidelity issued policies of title insurance without adhering to all of the requirements as it clearly stated it would. As such, this statement by Fidelity was FALSE.

To prevail on a § 59A-16-4(A) claim, URELC must show that Fidelity misrepresented a "benefit, advantage, condition or term" of the Owner's Policy. Examples of valid claims under this section include disclosures about insurance rates, *Woodworker's Supply, Inc. v. Principal Mut.*

---

[1] On April 27, 2020, the Court entered a Partial Summary Judgment against the trustee on his UIPA claim. The Court therefore will only address URELC's claim. As an alternative ruling to the April 27, 2020 judgment against the trustee on the UIPA claim, the Court's findings and conclusions in this opinion apply with equal force to the trustee's claim. That will be reflected in the partial summary judgment entered with this opinion.

[2] In the Complaint, Plaintiffs claim that Fidelity violated §59A-16-4(A), (D), and (G) by falsely representing Next Level's financial condition; failing to inform URELC prior to closing the transaction that the KZRV mortgage had not been released; and failing, within the policy, to identify the KZRV mortgage as a first mortgage encumbering the property. In response to Fidelity's motion for summary judgment, however, Plaintiffs abandoned their subsection (D) and (G) claims and argued only that Fidelity violated subsection (A).

*Life Ins. Co.*, 170 F.3d 985, 994 (10th Cir. 1999), and finance charges, *Azar v. Prudential Ins. Co.*, 133 N.M. 669, 688-89 (N.M. App. 2003).

URELC relies on the "Requirements" section of the title commitment Fidelity issued. The reliance is misplaced. The purpose of a title commitment is to prepare "for the issuance of a policy, but it is not a promise or an undertaking by the insurer that further work will be performed or that a risk will be insured." Barlow Burke, Law of Title Insurance, § 12.02 (3d Ed. 2019-2). "[A] title commitment is simply and solely a declaration of the title insurer's willingness to insure a defined title, at a future date, after a contemplated transaction is consummated and to indemnify at that time for covered defects according to the terms and conditions of the specified promised policy." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 823 N.E. 2d 168, 182 (Ill. App. 2005). While the title commitment issued to URELC required the release of the KZRV mortgage, Fidelity had no duty to secure the release. *Pearman v. Stewart Title Guaranty Co.*, 108 N.E. 3d 342, 347 (Ind. App. 2018) ("Title insurers give a preliminary commitment to property purchasers or lenders before the closing of the real estate transaction. *The buyer or lender* then may negotiate with the seller or borrower for the removal of any listed title defects, bargain to pay a lower amount to take subject to those risks, or rescind the transaction." (emphasis added)); *Malinak v. Safeco Title Ins. Co. of Idaho*, 661 P.2d 12, 15 (Mont. 1983) ("The title insurer, of course, does not agree to clear the title; rather by its commitment, the title company agrees to afford coverage in a title policy later to be issued insuring the title according to its commitment.").

The "Requirements" in the title commitment are not representations about the policy's "benefits, advantages, conditions, or terms." Rather, they are conditions to Fidelity's obligation to issue the policy. Fidelity may adhere to or waive those conditions, in its discretion. Fidelity's decision to close the transaction in reliance on Maese Sr.'s promise to obtain a release of the KZRV

Mortgage did not alter the "benefits, advantages, conditions, or terms" of the Owner's Policy. URELC got exactly what it bargained for: a title insurance policy that insured its ownership of the Property, free and clear of all liens except the LANB Mortgage.

URELC would shift Fidelity's role in the loan and purchase transaction from the title insurer to URELC's closing agent and fiduciary. That is not an accurate description of Fidelity's job. Rather, Fidelity had only to disclose to URELC the title it would insure and then, at closing, issue a conforming title policy. Fidelity did that. URELC was responsible for getting releases of the three mortgages on the Property. Fidelity made no misrepresentation about the policy's terms or benefits. Fidelity's unfortunate reliance on Maese Sr.'s promise was not a misrepresentation.

URELC also argues that Fidelity's denial of its claim under the Owner's Policy shows that Fidelity misrepresented the terms of the insurance policy. The argument fails. Denial of coverage under an exception is not evidence that the policy's terms were misrepresented. If it were, then all coverage denials would generate UIPA claims. Whether or not Fidelity was within its rights to deny coverage (to be dealt with elsewhere), the denial certainly was colorable, based upon, inter alia, Maese Sr.'s statements and actions. Denial of the claim is not relevant to Fidelity's duties under § 59A-14-4(A).

What went wrong in the purchase and loan transaction had nothing to do with Fidelity's representations about title insurance and everything to do with Maese Sr's broken promise. *See, e.g., Modisette v. Foundation Reserve Ins. Co.*, 427 P.2d 21, 25 (N.M. 1967) ("The obligation to deal fairly and honestly rests equally upon the insurer and the insured."); *Azar*, 133 N.M. at 687-88 ("[B]oth the insurer and the insured have the obligation to provide material and accurate information to the other before the sale of the insurance policy"). Fidelity is entitled to summary judgment on the § 59A-16-4(A) portion of URELC's UIPA claim.

D.   The Bad Faith Claim.

URELC's other UIPA claim is based on § 59A-16-20(E), which requires insurers to attempt "in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." URELC argues that Fidelity violated § 59A-16-20(E) by failing to conduct a reasonable investigation of URELC's claim before denying it.[3]

A bad faith claim raises the issue of the insurer's objective reasonableness. NMRA Civ. UJI 13-1705 & Committee Commentary ("[T]he good faith of the insurance company is determined by the reasonableness of its conduct[.]"); *Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 976 P.2d 1, 17 (N.M. 1998) ("While bad faith and unreasonableness are not always the same thing, there is a certain point, determined by the jury, where unreasonableness becomes bad faith[.]"); NMRA Civ. UJI 13-1702 ("An insurance company acts in bad faith when it refuses to pay a claim of the policy holder for reasons [that] are frivolous or unfounded. An insurance company does *not* act in bad faith by denying a claim for reasons [that] are reasonable under the terms of a policy.").

Inherent in the requirement that an insurer attempt, in good faith, to effectuate fair and equitable settlements is that the insurer properly investigate the insured's claim. *Sloan v. State Farm Mut. Auto Ins. Co.*, 85 P.3d 230, 237-38 (N.M. 2004); *see* NMRA Civ. UJI 13-1702 ("In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair investigation of the claim."). Denying coverage without

---

[3] Fidelity denied the claim under exclusion 3(a) of the Owner's Policy, which excludes from coverage any "defects, liens, encumbrances, adverse claims, or other matters . . . created, suffered, or agreed to by the insured claimant."

-6-
Case 18-01057-t    Doc 216    Filed 07/02/20    Entered 07/02/20 10:45:24 Page 6 of 10

adequately investigating the facts may be grounds for a bad faith claim. *Haygood v. United Services Automobile Association*, 453 P.3d 1235, 1241 (N.M. App. 2019).

An insurer need not show that its investigation was perfect, *American Nat. Prop. & Cas. Co. v. Cleveland*, 293 P.3d 954, 958 (N.M. App. 2012), nor that it led to a correct determination of coverage. *Jackson National Life Ins. Co. v. Receconi*, 827 P.2d 118, 135-36 (N.M. 1992) (if the insurer's investigation reveals facts that lead to the reasonable conclusion that the insured's claim is not viable, it is reasonable for the insurer to deny the claim even if the determination is ultimately held to be in error); *see also* Stephen S. Ashley, Bad Faith Actions Liability & Damages § 5:8 (2005) ("An insurer that performs an adequate investigation is not guilty of bad faith, even if the jury disagrees with the insurer's findings."). Rather, the insurer must show that its investigation was reasonable under the circumstances. *G&G Servs., Inc., v. Agora Syndicate, Inc.*, 993 P.2d 751, 757 (N.M. App. 1999). An adequate investigation is one that allows the insurer to form an "honest judgment" as to the merits of the claim, *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 690 P.2d 1022, 1026 (N.M. 1984), and satisfies basic standards of diligence and competence, *Sloan v. State Farm Mutual Auto. Ins. Co.*, 85 P.3d 230, 238 (N.M. 2004).

When there is no genuine issue that an insurer had a reasonable basis to deny a claim, an action against it asserting bad faith denial may be decided on summary judgment. *Yumukoglu v. Provident Life & Acc. Ins. Co.*, 131 F. Supp. 2d 1215, 1226 (D.N.M. 2001) (collecting cases); *Suggs v. State Farm Fire & Cas. Co.*, 833 F.2d 883, 891 (10th Cir. 1987) (reversing the trial court's denial of insurance company's motion for judgment n.o.v. on plaintiff's bad faith claim where evidence was conflicting about whether plaintiff committed arson); *American National Property & Cas. Co. v. Cleveland*, 293 P.3d 954, 958 (N.M. App. 2012) ("[A]n insurer has a right to refuse a claim without exposure to a bad faith claim if it has reasonable grounds to deny coverage.").

KZRV brought a foreclosure action against URELC, LANB, and others on January 20, 2015, seeking to foreclose the KZRV Mortgage. KZRV's complaint prompted LANB to send Fidelity a notice of claim on April 21, 2015, which was followed on July 28, 2015 by URELC's notice of claim. Fidelity investigated the facts related to the claims. It determined that LANB's claim should be honored while URELC's should be denied.[4]

The claims were investigated by Matt Semple, claims counsel for Fidelity. Semple reviewed LCAT's file and spoke to Elvia Romero about the transaction. The information Semple assembled included:

- A copy of the title commitment disclosing the KZRV mortgage;

- The operating agreements of URELC and RE Holdings, indicating that Maese Sr. and his son, Maese Jr. were 49% owners of RE Holdings (the sole member of URELC);

- Documentation that Maese Sr. was president of NextLevel, LLC— the seller of the Property and the signer of the KZRV Mortgage;

- The order form submitted by LANB to LCAT stating that Maese Sr. was URELC's designated contact person for the transaction;

- The HUD settlement statement signed by Lamey at closing, indicating that no funds would be disbursed to KZRV in satisfaction of its mortgage;

- Evidence that Maese Sr. had promised to deliver a release of the KZRV Mortgage; and

---

[4] The record does not show when Fidelity decided to honor LANB's claim. On June 30, 2015, however, Fidelity's title insurance counsel filed a motion on behalf of LANB to intervene in the KZRV foreclosure action. Fidelity denied URELC's claim on September 15, 2015.

- Emails showing that Romero's assistant sent a form of release to Maese Sr. by way of LANB.[5]

URELC argues that Fidelity's investigation fell short because Fidelity relied exclusively on "clearly biased sources" (Elvia Romero and LCAT) without speaking to Maese Sr., Maese Jr., or Lamey before denying URELC's claim. URELC's evidence does not create a triable issue of fact on the adequacy of Fidelity's investigation. True, Semple could have talked to Maese Sr., Maese Jr., and/or Lamey, but his investigation was adequate without those conversations. The facts Semple compiled include substantial evidence that URELC knew the KZRV mortgage was not going to be released at closing. Based on the evidence, Fidelity had a reasonable basis to conclude that URELC, acting through Maese Sr. and/or Lamey, "suffered" or "agreed to" the KZRV mortgage. Correct or not,[6] Fidelity's decision to deny the claim was neither unfounded nor unreasonable.[7] Fidelity is entitled to summary judgment on URELC's bad faith claim.

### III. CONCLUSION

Fidelity sold URELC a title insurance policy that was exactly as represented. There is no genuine issue of fact that Fidelity did not violate § 59A-16-4(A). Fidelity denied URELC's insurance claim based on a reasonable investigation of the facts, which revealed substantial evidence that supported Fidelity's decision. There is no genuine issue of fact that Fidelity did not violate § 59A-16-20(E). A separate judgment shall be entered granting Fidelity summary judgment on URELC's UIPA claim.

---

[5] In addition, Fidelity's claim denial letter states that Lamey became a member of NextLevel, LLC along with the Maeses. That assertion has never been questioned.

[6] This issue is the subject of URELC's breach of contract claim, as to which Fidelity's motion for summary judgment is pending.

[7] This conclusion is bolstered by the fact that Fidelity in essence honored URELC's claim when it paid off the KZRV Mortgage.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: July 2, 2020

Copies to: Counsel of record