UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

BRYAN A. LAMEY,                                                                No. 14-13729 ta7

    Debtor.

EDWARD MAZEL, chapter 7 trustee,
and UNITED REAL ESTATE
LAS CRUCES, LLC,

    Plaintiffs,

v.                                                                                              Adv. No. 18-01057-t

LAS CRUCES ABSTRACT AND TITLE
COMPANY, FIDELITY NATIONAL
TITLE INSURANCE COMPANY, and
TCNM, LLC,

    Defendants.

## **OPINION**

    Before the Court is Las Cruces Abstract and Title Company ("LCAT") and Fidelity National Title Company's joint motion for summary judgment on the professional negligence claim brought by United Real Estate Las Cruces, LLC ("URELC").[1] LCAT and Fidelity argue that they are entitled to judgment because the claim is based on an alleged duty to disclose a certain fact, while the undisputed evidence is that URELC was well aware of the fact. They also argue

---

[1] The Court earlier ruled that the trustee lacks standing to assert claims against Fidelity and LCAT. *See In re Lamey*, 2020 WL 1671550 (Bankr. D.N.M.). The Court also ruled that URELC does not have a claim against LCAT in connection with LCAT's actions as Fidelity's local title agent. *See In re Lamey*, 2020 WL 5534527 (Bankr. D.N.M.). This opinion therefore addresses URELC's negligence claim against LCAT in connection with LCAT's services as URELC's closing agent.

that the alleged negligence did not damage URELC. The Court, having reviewed the briefs, evidence, and relevant law, finds that the joint motion is well taken and should be granted.

A.   Facts

The facts relevant to the motion are set forth in the Court's Omnibus Findings of Fact, entered March 20, 2020, doc. 159. The facts are incorporated by reference. Capitalized terms not defined in this opinion have the meanings ascribed to them in the omnibus findings.

Additionally, Lamey admitted in his deposition that "a combination of the 'three of us'" (i.e. Lamey, Maese Sr. and Maese Jr.) handled URELC's responsibilities for closing the LANB loan transaction. URELC did not dispute this fact.

B.   Summary Judgment Standards

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" thereby entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (with alterations). In ruling on a motion for summary judgment, the Court is required to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations omitted).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

C. <u>Negligence</u>

Plaintiffs' complaint includes a claim of professional negligence against LCAT. Plaintiffs have moved to amend the complaint to add a claim of "negligence." The Court has yet to rule on the motion. Nevertheless, the Court will consider both professional and ordinary negligence.

Every professional has a duty to her client to provide professional services that are reasonable under the circumstances, as established by prevailing professional standards. *See*, *e.g.*, *Lester v. Hall*, 970 P.2d 590 (N.M. 1998); *Henning v. Parsons*, 623 P.2d 574, 576 (N.M. App. 1980). The standard of conduct in a professional negligence case "is measured by the duty to apply the knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances." *Adobe Masters, Inc. v. Downey,* 118 N.M. 547, 548 (S. Ct. 1994). In some professional negligence cases, expert testimony is required to establish the standard of care; not so where the "particular acts were breaches of duty within a layman's common knowledge." *Id.* at 135.

> Generally, a plaintiff must prove the following elements to prevail on a claim for professional malpractice based on negligence: "(1) the employment of the defendant [professional]; (2) the defendant [professional's] neglect of a reasonable duty; and (3) the negligence resulted in and was the proximate cause of loss to the plaintiff." *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor,* 1993–NMCA–008, ¶ 9, 115 N.M. 159, 848 P.2d 1086. Professional malpractice based upon breach of duty concerns violations of a standard of conduct. *See Spencer v. Barber,* 2013–NMSC–010, ¶ 17, 299 P.3d 388.

*Buke, LLC v. Cross Country Auto Sales, LLC*, 331 P.3d 942, 954 (N.M. App. 2014).

The elements of an ordinary negligence claim are similar: "(1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) the breach of duty as cause of the injury." *Zamora v. St. Vincent Hosp.*, 335 P.3d

1243, 1249 (N.M. 2014), citing *Herrera v. Quality Pontiac*, 134 N.M. 43, 47-48 (S. Ct. 2003). Like professional negligence, the cause has to be proximate. *See Herrera*, 134 N.M. at 47-48.

URELC's negligence claim is based on the allegations that LCAT failed to disclose that the KZRV mortgage had not been released at closing and that URELC suffered damages as a result.[2] URELC does not rely on expert testimony to establish the standard of care applicable to closing agents in performing their duties. It argues, instead, that LCAT's failure of disclosure fell below the standard of ordinary care owed to URELC. *See* NMRA Civ. UJI 13-1603 (Ordinary Care) ("Ordinary care" means the degree of care that "a reasonably prudent person would use in" conducting his or her own affairs. "What constitutes 'ordinary care' varies with the nature of what is being done.").

D. <u>The Duty of Disclosure</u>

---

[2] URELC's complaint identifies only one allegedly negligent act, i.e., "the failure to disclose that the KZRV Mortgage had not been released prior to closing of the Transaction." In its response to the motion for summary judgment, however, URELC attempts to add another instance of alleged negligence, namely LCAT's violation of its alleged "duty to get a release of the KZRV Mortgage." As this second alleged duty was not pled, the Court will not consider it. Even if it were proper to do so, the Court concludes that a closing agent has no duty to a buyer to ensure that all encumbrances disclosed on a title commitment are released at closing. The closing agent is given closing instructions by the hiring parties. The closing agent's duty is to carry out the instructions. It is not a real estate investment advisor and has no duty to determine a sophisticated buyer's intentions and ensure that they are realized. In any event, there was no money to pay off the $1 million KZRV Mortgage. Was LCAT supposed to advance the funds? Before everything went wrong, Lamey and the Maeses held themselves out as sophisticated businessmen, using their combined experience and acumen to turn around a money-losing RV business. Once their efforts failed so abysmally, URELC and the trustee began portraying Lamey and the Maeses as inept naïfs who relied on LCAT to advis and protect them. The self-serving volte-face deceives nobody.

Where the nature of the relationship between the parties gives rise to a duty to disclose material facts, the failure to do so may constitute an actionable breach.[3] *See, e.g.*, *Robertson v. Carmel Builders Real Estate*, 92 P.3d 653, 663 (N.M. App. 2003); *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 766 P.2d 928, 932 (N.M. App. 1988); *Provencio v. Wenrich*, 261 P.3d 1089, 1095 (N.M. 2011); *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 976 P.2d 1, 14 (N.M. 1998); *Delgado v. Costello*, 580 P.2d 500, 503 (N.M. App. 1978). A closing agent may have a duty of disclosure to its clients. *See Cano v. Lovato* 734 P.2d 762, 775 (N.M. App. 1986).

The duty of disclosure, however, only applies to facts the plaintiff did not know. *See, e.g., Bills v. Hannah, Inc.*, 230 Mont. 250, 253 (S. Ct. 1988) ("A realtor has an affirmative duty to disclose all material facts to the seller. However, a realtor has no duty to disclose what the seller already knows.") (citation omitted); *Mallory v. Watt*, 100 Idaho 119, 122-23 (1979) (same); *see also* Restatement (Second) of Torts § 551 cmt. m. (defendant's knowledge of the fact negates any duty to disclose). *Cano* is not to the contrary because in that case the clients had no knowledge of the information withheld by the closing agent. 734 P.2d at 775.

Here, URELC knew the KZRV mortgage was not going to be released at closing.[4] LCAT therefore did not have a duty to disclose that fact to URELC. Without a duty of disclosure, there

---

[3] Plaintiffs have not asserted a claim for negligent misrepresentation—a claim distinct from ordinary or professional negligence. *See e.g., Barrington Reinsurance Ltd. v. Fidelity Nat'l Title Ins. Co.*, 172 P.3d 168, 172 (N.M. App. 2007) (distinguishing a claim of negligence from a claim of negligent misrepresentation—which is founded on the supply of false information for the guidance of another in a business transaction when the recipient relies to his detriment on the false information provided).

[4] The Court has held that the undisputed evidence in the record shows that Maese Sr. was URELC's agent in the transaction, and that no reasonable jury could find otherwise. *In re Lamey*, 2020 WL 4045254, *4 (Bankr. D.N.M.). As such, Maese Sr.'s knowledge of the KZRV mortgage, and of the fact that it was not released at closing, are imputed to URELC. *Id.* Maese Sr. knew full well that the KZRV mortgage was not going to be released at closing. Lamey also admitted that he, Maese Jr., and Maese Sr. shared the responsibility of representing URELC in closing the loan and purchase transaction.

cannot have been a breach and URELC's negligence claim, whether couched in terms of professional or ordinary negligence, fails.

E. <u>Proximately Caused Damages</u>

An essential element of a negligence claim is damages proximately caused by the defendant's negligent act. *See, e.g., Paez v. Burlington N.S.F. Ry.*, 362 P.3d 116, 122 (N.M. App. 2015) ("Absent the element of proximate cause, a claim for negligence fails regardless of the presence of the remaining elements of the cause of action."). Proximate cause is

> that which, in a natural or continuous sequence, produces the injury and without which the injury would not have occurred. . . . [It] encompasses whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury[.]

*Id.* at 121 (internal quotations omitted). Foreseeability is an integral requirement in a finding of proximate cause. *Herrera*, 134 N.M. at 48 ("Integral to both [duty and proximate cause] is a question of foreseeability") (quoting *Calkins v. Cox Estates*, 110 N.M. 59, 61 (S. Ct. 1990)). Although proximate cause generally is a fact issue, *Paez*, 362 P.3d at 121, "proximate cause becomes an issue of law 'when the facts are undisputed and the reasonable inferences from those facts are plain and consistent[.]'" *Id.*, quoting *Lujan v. N.M. Dep't of Transp.*, 341 P. 3d 1, 10 (N.M. App. 2015). In such cases it is within the Court's purview to declare, as a matter of law, that the plaintiff's injuries were not proximately caused by the defendant's conduct. *Paez*, 362 P.3d at 121-22.

URELC presents several theories in support of its damages claim. They are set forth in the following italicized bullet points and addressed in turn.

- *Had LCAT not violated its duty to get a release of the KZRV Mortgage and subsequently failed to disclose that the KZRV Mortgage had not been released, neither Lamey nor URELC would have authorized the closing, the loan from LANB would never have been secured, and the investments in URELC would never have been made.*

First, LCAT had no duty to get a release of the KZRV mortgage, nor was any such duty alleged in the complaint. Second, the alleged failure to disclose that the mortgage would not be released at closing did not proximately cause any of URELC's claimed damages. True, URELC lost money in its business operations. It also is true that URELC would not have lost money if it had never operated. However, the only causal link between LCAT's alleged disclosure failure and URELC's business failure, if any, is "but for" causation, not proximate causation. This has been discussed in some detail in another opinion. *See In re Lamey*, 2020 WL 5534527, *5 (Bankr. D.N.M.). "But for" causation does not support a negligence claim. It was wholly unforeseeable that LCAT's alleged failure to tell URELC that the KZRV mortgage would not be released at closing would result in URELC losing lots of money in business operations, defaulting on its loan from LANB, and having its property sold at foreclosure sale. URELC's damages theory has even less merit than the claim of a plane crash victim's estate against the taxi company who took him to the airport, alleging that if the taxi had not given the victim a ride, he would have missed his plane and not died in the crash.

- *Further, Lamey would not have closed on the purchase of 700 Stern Dr. in the first place had he known of the existence of the KZRV Mortgage.*

First, Lamey is not a plaintiff. Second, the negligence claim hinges on alleged failure to disclose that a mortgage would not be released, not the mortgage's existence. If what URELC is getting at is that it would not have closed the transaction had it known that the KZRV mortgage would not be released, see the above discussion about "but for" causation.

- *[F]ollowing the cessation of operations in Las Cruces, URELC immediately listed the property for sale with LANB's approval. Bryan Lamey worked with Al Hernandez of LANB and communicated with LANB on a weekly basis with respect to URELC's efforts to sell all, or a portion, of the Las Cruces property. When potential sale opportunities arose, Bryan Lamey sought LANB's approval. On at least one occasion, URELC did obtain the approval of LANB to sell a portion of*

> *the property, although the sale never came to fruition. Moreover, URELC was developing a plan to sell part of the property and use the proceeds of the sale to pay down the principal and to set up a reserve fund to give URELC at least another year of principal and interest payments. URELC was entertaining offers to sell the Property at the time LANB filed its foreclosure. (citations to the record omitted)*

This focuses on the time after the United entities shut down the RV business but before LANB brought its foreclosure action. It does not allege any damages at all. To the extent the paragraph can be read to allege that URELC was prevented from selling the subject property because of the KZRV mortgage, there is no evidence in the record to support the allegation. On the contrary, URELC relies on Lamey's hard-to-believe testimony that he knew nothing about the KZRV mortgage until after LANB brought its foreclosure action. That reliance makes it impossible for URELC to assert that the mortgage interfered with any potential sale before LANB brought its action.

> - *On July 10, 2012, 700 Stern Dr. appraised at two million five hundred thousand dollars. On, November 22, 2016, 700 Stern Dr. was auctioned at a Special Master's Sale which resulted from a foreclosure action by LANB against United Real Estate Holdings, LLC ("UREH"), United Real Estate Las Cruces, LLC ("URELC") and United RV Holdings, LLC. The highest bid for the property was submitted by LANB in the amount of one million eight hundred twenty-seven thousand five hundred dollars ($1,827,500) as partial credit against its Judgment. The District Court approved the Special Master's sale on November 30, 2016 and awarded LANB a deficiency judgment against UREH, URELC, and URVH in the amount of four hundred forty-eight thousand nine hundred nineteen dollars and forty-two cents ($448,919.42), plus interest at sixteen percent (16%) per annum. The difference between the appraised value of 700 Stern Dr. in July of 2012 and the sum of the price paid at auction and the deficiency judgment awarded to LANB amounts to two hundred twenty-three thousand five hundred eight* [sic] *dollars and fifty-eight cents ($223,580.58) and represents, in part, the equity that was lost by Plaintiffs due to LCAT's negligence and Fidelity's wrongful denial of coverage to URELC, and its failure to act diligently to remove the KZRV Mortgage clouding the title.*

This lengthy allegation is mostly an attempt to monetize URELC's alleged "but for" causation damages. All of the damages are directly related to the fact that URELC was a money-losing venture. None are related to the nonrelease of the KZRV mortgage. The allegation that

URELC would never have gone into business, and therefore never would have lost money, if LCAT had only told it about the KZRV mortgage, is a far-fetched and cynical attempt to blame someone else for its business failure. It borders on bad faith. URELC also throws in an allegation about Fidelity failing to act diligently, but there is no evidence in the record that URELC suffered any loss because of the time it took to get the KZRV mortgage released. Finally, URELC complains about Fidelity's failure to provide title insurance coverage. It is undisputed, however, that Fidelity paid off the KZRV mortgage at its own considerable expense.

- *Although Fidelity ultimately settled the KZRV litigation with LANB, it took roughly eighteen months to do, while in the meantime it subjected its other insured to foreclosure, loss of the equity in the building, and liability for costs, fees, and interest associated with the foreclosure.*

This is a rehash of the claim that the delay in releasing the KZRV mortgage caused URELC to lose money. There is no evidence in the record to support that allegation. Further, URELC has admitted that it is not claiming any damages because of attorney fees incurred. *See In re Lamey*, 2020 WL 4045254, *2 (Bankr. D.N.M.). URELC should not have added that allegation to its claimed damages.

- *During this time, URELC was effectively precluded from selling, leasing, or utilizing this asset.*

URELC has produced no evidence that any delay in releasing the KZRV mortgage caused a loss.

- *Thus, the sum of the lost equity in the amount of $223,580.58 and the deficiency judgment of $448,919.42 plus interest at 16% per annum represent, in part, the economic damages suffered by Plaintiffs as a result of LCAT's negligence and Fidelity's failure to provide URELC with coverage under the Owner's Policy.*

These allegations and the claimed "but for" damages have already been discussed.

In sum, none of the three alleged categories of damages supports URELC's negligence claim. First, the "business failure" damages were not proximately caused by the alleged

negligence. Second, there is no factual support in the record for any alleged delay damages. Finally, the attorney fee damages are not even being sought by URELC.

F.    <u>Comparative Fault</u>

URELC argued comparative fault in its summary judgment response. Under comparative fault principles, a defendant's liability for negligence can be reduced to the extent the claimed damages were caused by plaintiff's negligent conduct. *See, e.g., Tafoya v. Rael*, 193 P.3d 551, 556 (N.M. 2008). As shown above, URELC's negligence claim fails. Thus, comparative fault in not relevant.

<u>Conclusion</u>

LCAT and Fidelity's motion for partial summary judgment on URELC's negligence claim is well taken and will be granted by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 23, 2020
Copies to: counsel of record